IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF SOUTH CAROLINA

ROCK HILL DIVISION

| | |
|---|---|
| Kevin Faile, Louis C. Roman, Alan R. DePalma, and Brian Scott Craton, all individually and on behalf of all other similarly situated individuals,<br><br>        Plaintiffs,<br><br>        vs.<br><br>Lancaster County, South Carolina,<br><br>        Defendant. | Civil Action No. 0:10-cv-2809-CMC<br><br>**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT** |

## I.  Introduction

Plaintiffs, Kevin Faile, Louis C. Roman, Alan R. DePalma, and Brian Scott Craton, by and through their undersigned attorney, hereby submit this Memorandum of Law in Support of Plaintiffs' Motion for Partial Summary Judgment. As set forth in detail below, Plaintiffs are entitled to judgment as a matter of law on the following issues: (1) that Defendant has violated section 7(a)(1) of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 207(a)(1), by paying its EMS employees overtime only after they worked more than 106 hours every two weeks, rather than after they worked more than 40 hours every workweek; (2) that Defendant has violated the FLSA by requiring its EMS employees to work for fifteen minutes "off the clock" at the end of every 24-hour shift, without compensation; (3) that Defendant is not entitled to exclude eight hours of sleep time from Plaintiffs' compensable time under the plain language of 29 C.F.R. § 553.222, because Plaintiffs generally worked a tour of duty of exactly 24 hours; (4) that Defendant is not entitled to any set-off or credit against its overtime liability for any alleged overpayments to Plaintiffs in bi-weekly pay periods

where Plaintiffs were regularly scheduled to work two "short weeks" of only two shifts each; and (5) that the additional "short week" payments should actually be included in the EMS employees' "regular rate" for calculating overtime pay under the FLSA.

## II.  Statement of Facts

This is lawsuit under the Fair Labor Standards Act and the South Carolina Payment of Wages Act for unpaid overtime compensation and to recover compensation for "off the clock" work required by Defendant.  Plaintiffs and members of the putative Plaintiff class are paramedics and EMTs employed by or formerly employed by Defendant Lancaster County's EMS Department. Plaintiffs have filed this case as a collective action under Section 16(b) of the FLSA and also as a traditional class action under Rule 23, Fed. R. Civ. P., for the alleged violations of the South Carolina wage payment statute.

For purposes of the legal issues raised in this motion for partial summary judgment, the material, underlying facts of this cases are not really in dispute.  Plaintiffs generally work a rotating schedule of 24-hour shifts: one day on followed by two days off.  This pattern of scheduled duty repeats itself every three calendar days, causing Plaintiffs generally to have either three, 24-hour shifts (72 hours total) or two, 24-hour shifts (48-hours total) per work week.

Prior to late October 2010, Defendant paid its EMS employees under Section 7(k) of the FLSA, 29 U.S.C. § 207(k), which allows public employers to pay overtime to fire protection employees and law enforcement personnel under a unique set of rules.  Generally, the FLSA requires employers to pay overtime compensation of one-and-a-half times the employee's regular rate for any hours over 40 in any given work-week.  29 U.S.C. § 207(a)(1).  The basic rule under the FLSA is that each work-week must be examined independently of other work-weeks.  29 C.F.R. § 778.104.

2

Section 7(k) allows public employers to aggregate up to four work-weeks at a time and take an average to determine whether overtime compensation is owed. Section 7(k) also contains a higher threshold for overtime for employees in fire protection and law enforcement: fire protection employees are entitled to overtime only after averaging more than 53 hours per work-week; and law enforcement employees are entitled to overtime only after averaging more than 43 hours per work-week. 29 C.F.R. § 553.230.

Here, Defendant's EMS Department operated under a policy whereby EMS employees were only paid overtime after working more than 106 hours in a two-week pay period. (See Lancaster County EMS Policies & Procedures, at 13-14) ("EMS Handbook") (excerpts attached hereto as Exhibit A). In other words, Defendant paid its employees in the EMS Department overtime under the rules applicable to fire-fighters under Section 7(k). Plaintiffs' first claim is that the policy of paying overtime only after 106 hours worked in a two-week pay period, rather than after 40 hours of work per week violates the FLSA.

The second aspect of Defendant's overtime pay policies prior to the change in October 2010 that is the subject of Plaintiffs' Complaint is that the EMS Department generally deducted eight hours' pay from each 24-hour shift for a designated sleeping period. Although the EMS employees were required to be at the station, in uniform, ready to respond to calls during the entire 24-hour shift, they were scheduled to be paid only 16 hours of each 24-hour shift, with a designated sleep period between 11:00 p.m. and 7:00 a.m. each shift. (EMS Handbook, Exhibit A, at 13). Defendant adjusted employees' pay for any interruptions that occurred during the scheduled sleeping period largely based on a subjective review by supervisors at the end of each shift. Only regularly scheduled, full-time, 24-hour shift employees were subjected to the 8-hour, sleep-period deduction;

part-time employees and full-time employees who worked an extra shift on any given week were paid for the full 24-hour shift without any reduction for sleep time. (EMS Handbook, Exhibit A, at 13) ("Part-time employees are paid for all hours worked.").

The next issue relating to Plaintiffs' motion is that employees were required to work 15 minutes at the end of each shift "off the clock" to transition the ambulance and controlled drugs to the on-coming crew. Although the stated, paid shift was exactly 24-hours, from 8:00 a.m. until 8:00 a.m. the following day, EMS employees were required to stay until at least 8:15 a.m. the following day; however, the County did not include the extra 15-minutes of each shift as compensable time.

Finally, Defendant has asserted that it is entitled to a set-off against any overtime liability for weeks where EMS employees were paid additional sums beyond their actual time worked. Full-time EMS employees were paid 16 additional hours beyond their scheduled shifts once every six weeks, where two short-weeks occurred in a single pay period. Because the rotating shift work described above repeated itself every three weeks and because the County paid employees bi-weekly, once every three pay periods employees were paid for two short-weeks in a single pay check. To illustrate this pattern, employees were scheduled to receive sixteen hours pay for each 24-hour shift, after the County deducted the 8-hour sleeping period. Not counting any pay for interruptions during the sleep period, "long weeks" of three full shifts would include 48 hours of scheduled work, while "short weeks" of two full shifts would include 32 hours of scheduled work. Thus, in every six-weeks period, employees would receive three bi-weekly pay checks: (1) one long-week plus one short-week, (2) one short- week plus one long-week, and (3) two short-weeks. To bring the average work-week up to 40 hours during the pay periods with the two short weeks, Defendant's Director of Operations added 16 hours to each employee's time sheets during one of those weeks, beyond the

4

amount of hours actually worked.  Defendant contends that the Director of Operations acted in this regard without the County's knowledge or authority, and that employees were overpaid in those weeks by receiving sixteen extra hours of pay for which they performed no work.  As discussed in Section III.E. below, Plaintiffs assert that this additional pay for "short weeks" should actually be included as part of Plaintiffs' "regular rate of pay" for purposes of determining overtime compensation under the FLSA because it was a necessary component of each full-time employees stated, annual base pay.

### III.  Discussion

### A.  Summary Judgment Standard

Rule 56(a) of the Federal Rules of Civil Procedure provides, "A party claiming relief may move, with or without supporting affidavits, for summary judgment on all or part of the claim." Fed. R. Civ. P. 56(a).  Summary judgment is appropriate where "there is no genuine issue as to any material fact and . . . the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c)(2). The party seeking summary judgment has the initial burden of establishing an absence of a genuine issue of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  Thereafter, summary judgment is appropriate unless the non-moving party can affirmatively demonstrate a genuine issue of material fact.  Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). Summary judgment should not be viewed "as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'"  Celotex Corp., 477 U.S. at 327 (quoting Fed. R. Civ. P. 1).  In reviewing a motion for summary judgment, the court must view all facts and inferences in the light most favorable to the non-moving party.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242,

5

255 (1986).

Here, there is no genuine issue of material fact with regard to the five legal issues that are the subject of Plaintiffs' Motion for Partial Summary Judgment. Although Plaintiffs are aware that courts are hesitant to decide cases in a piece-meal fashion, these five discrete legal issues can be decided as a matter of law relatively early in the case to establish a framework for the parties not only in conducting discovery, retaining expert witnesses, and preparing for trial, but also to guide the parties in further settlement negotiations.

## B.  Section 7(k) Exemption

The FLSA generally requires employers to pay non-exempt employees overtime compensation of at least one-and-a-half times their regular rate of pay for any hours worked in excess of 40 hours in any given work week. 29 U.S.C. § 207(a)(1). The basic unit of measure under the FLSA is the single work week. One of the fundamental principles of the FLSA is that each work week must be examined independently, without regard to how many hours were worked in other work weeks. 29 C.F.R. § 778.104:

> The Act takes a single workweek as its standard and does not permit averaging of hours over 2 or more weeks. Thus, if an employee works 30 hours one week and 50 hours the next, he must receive overtime compensation for the overtime hours worked beyond the applicable maximum in the second week, even though the average number of hours worked in the 2 weeks is 40. This is true regardless of whether the employee works on a standard or swing-shift schedule and regardless of whether he is paid on a daily, weekly, biweekly, monthly or other basis.

It is well settled that the FLSA is remedial legislation designed to protect workers; therefore, the Act must be construed "liberally to apply to the furthest reaches consistent with congressional direction." Tony & Susan Alamo Found. v. Secretary of Labor, 471 U.S. 290, 296 (1985). Although the Act contains a number of specific exemptions from the general rules of Section 7(a) regarding

overtime pay, "[e]xemptions to the FLSA overtime requirements are to be narrowly construed against the employer asserting them, and the employer carries the burden of proving by clear and affirmative evidence that it is entitled to the exemption." Carter v. City of Charleston, 995 F. Supp. 622, 624 (D.S.C. 1997) (citing Johnson v. City of Columbia, 949 F.2d 127, 129-30 (4th Cir. 1991) (en banc)). The Fourth Circuit has specifically recognized that the employer's burden to establish any exemptions under the FLSA is "not insubstantial." Roy v. Lexington County, 141 F.3d 533, 540 (4th Cir. 1998).

The first issue raised in Plaintiffs' motion relates to a partial exemption found in Section 7(k) of the FLSA, 29 U.S.C. § 207(k), which allows public employers to use a different set of rules to calculate overtime pay for employees engaged in fire protection or law enforcement activities. The Section 7(k) exemption allows a public agency to aggregate up to 28 consecutive days, rather than the normal seven-day work week. The Section 7(k) exemption also contains a higher threshold for overtime pay: fire protection employees are entitled to overtime only after they exceed 53 hours on average per week; and law enforcement employees are entitled to overtime only after they exceed 43 hours on average per week. 29 C.F.R. § 553.230.

For many years, Defendant paid employees in its EMS Department pursuant to Section 7(k) under the rules applicable to fire protection employees. The written Policies and Procedures of the Lancaster County EMS Department expressly contain the following provisions under the heading "Overtime":

- Twenty-four (24) hour shift employees are eligible for overtime after accruing one hundred-six (106) hours of straight time worked.

- 8-5 employees are eligible for overtime after accruing 80

7

hours of straight time worked.

- Part-time employees working twenty-four (24) hour shifts are eligible for overtime after accruing one hundred-six (106) hours of straight time worked.

(EMS Handbook, Exhibit A, at 13-14). The policy attempts to aggregate two work weeks corresponding to the County's bi-weekly pay periods and uses the 53-hour weekly average for employees in fire protection activities. In its Local Rule 26.03 Responses, Defendant clearly states, "The County compensated Plaintiffs for overtime based on the partial exemption for employees engaged in fire protection services found at 29 U.S.C. § 207(k) and 29 C.F.R. § 553.230." (A copy of Defendant's Local Rule 26.03 Responses is attached hereto as Exhibit B). Under this Court's Local Civil Rules, "Responses pursuant to Local Rules 26.01 and 26.03 may be relied on and used in the same manner as discovery responses obtained under the Federal Rules of Civil Procedure." Local Civil Rule 26.01, D.S.C. Thus, there is no dispute of fact that the County's policies used Section 7(k) to calculate overtime pay for EMS employees prior to October 24, 2010.

In Roy v. Lexington County, 141 F.3d 533 (4th Cir. 1998), the Fourth Circuit Court of Appeals examined a similar overtime policy for employees of the Lexington County EMS Department. The Roy court examined the former regulations (found at 29 C.F.R. § 553.215(a)) governing when the duties of EMS employees are "substantially related" to those of firefighters or law enforcement officers for purposes of qualifying for the Section 7(k) exemption. The Roy court affirmed the district court's finding that the County did not meet its burden of proving that EMS employees were "regularly dispatched to fires, crime scenes, riots, natural disasters, and accidents" within the plain language of the regulation so as to qualify for the Section 7(k) exemption. Id. at 540-41.

8

Similarly, in West v. Anne Arundel County, Maryland, 137 F.3d 752 (4th Cir. 1998), the Fourth Circuit Court of Appeals held that EMTs who were employees of the defendant county's fire department could not paid overtime under Section 7(k) because they did not engage in "fire protection activities," as defined by the applicable regulations.  Former section 553.212  provided that "[a] person who spends more than 20 percent of his/her working time in nonexempt activities is not considered to be an employee engaged in fire protection or law enforcement activities for purposes of this part."  29 C.F.R. § 553.212(a) (amended), quoted in West, 137 F.3d at 761.  The West court held that the EMTs did not fall under Section 7(k), even though they were actually employed by the County fire department, because "they are medical personnel rather then firefighters."  West, 137 F.3d at 761.

In December 1999 (after the Roy and West cases were decided by the Fourth Circuit), Congress amended the Fair Labor Standards Act to add a specific, statutory definition of the term "Employee in fire protection activity" as used in Section 7(k), in an effort to clarify when Section 7(k) is applicable to public fire department employees.  Fair Labor Standards Act Amendment, Pub. L. No. 106-151, 113 Stat. 1731 (1999) (codified at 29 U.S.C. § 203(y)).  Section 3(y) of the FLSA provides as follows:

> "Employee in fire protection activities" means an employee, including a firefighter, paramedic, emergency medical technician, rescue worker, ambulance personnel, or hazardous material worker, who –
> (1)  is trained in fire suppression, has the legal authority and responsibility to engage in fire suppression, and is employed by a fire department of a municipality, county, fire district, or State; and
> (2)  is engaged in the prevention, control, and extinguishment of fires or response to emergency situations where life, property, or the environment is at risk.

9

29 U.S.C. § 203(y) (emphasis added).

None of the Plaintiffs or the members of the proposed Plaintiff class of employees in Defendant's EMS Department meets the definition of "Employee in fire protection activities" under Section 3(y) of the FLSA. As set forth in the Affidavit of Plaintiff Kevin Faile, attached hereto has Exhibit C, Plaintiffs are plainly not employees of the Lancaster County Fire Service or Fire Department, but are employees of the entirely separate Lancaster County EMS Department, which has its own budget, facilities, personnel, and command structure. (Faile Aff., at 2-3, ¶¶ 6-8). Also, Plaintiffs do not have any legal authority or responsibility to engage in fire suppression activities. (Faile Aff., at 3, ¶¶ 9-10). Clearly, Plaintiffs and the members of the Plaintiff class are not "employee[s] in fire protection activities" under Section 3(y) of the FLSA; thus, the County could not pay them overtime under the partial exemption in Section 7(k) for fire fighters. See Diaz v. City of Plantation, 524 F. Supp. 2d 1352 (S.D. Fla. 2006) (holding that EMTs employed in the rescue division of the defendant city's fire department could not be paid under Section 7(k) because they did not meet the definition of "employee in fire protection activities" under Section 3(y), since the EMTs did not have legal authority and responsibility to engage in fire suppression); Chavez v. City of Katy, 2005 WL 1657037 (S.D. Tex. July 14, 2005) (same) (copy of unpublished decision attached hereto).

There is no genuine issue of material fact on this issue, and Plaintiffs are entitled to judgment as a matter of law that the County's use of Section 7(k) to pay overtime to its EMS workers violated the FLSA.

### C.  Off-the-Clock Work

There also no dispute that Defendant's EMS Department required its employees to work at

least an additional 15 minutes beyond the scheduled 24-hour shift, without any compensation for those additional 15 minutes. Defendant's EMS Department handbook provides, "On-duty personnel will clock in prior to 0801 on ePro Scheduler and clock out after 0815 [the following day]." (EMS Handbook, Exhibit A, at 10). The handbook also provides, "Work hours for all twenty-four (24) hour employees is 0800 - 0815 the following day." (EMS Handbook, Exhibit A, at 13). Although employees were scheduled to work at least 24 hours and 15 minutes each full shift, they were only paid for 16 hours, plus any interruptions in the sleep period, up to a maximum of 8 more hours. (EMS Handbook, Exhibit A, at 13) ("Twenty-four (24) hours shift employees are paid on a sixteen (16) hour day. Sleep time is from the hours of 2300 - 0700 the next day. The employee will be paid actual hours of sleep interrupted unless he/she does not have five (5) hours sleep available. The employee will automatically receive eight (8) hours sleep time if they respond to three (3) calls, do not have five (5) hours available, or perform an inter-facility transport.").

Defendant has acknowledged that it did not pay its EMS employees for the additional 15 minutes per shift during the applicable period covered by the Complaint. Plaintiffs propounded the following in their First Set of Requests for Admissions: "Admit that prior to November 5, 2010, employees in Defendant's EMS Department who work 24-hour shifts were only paid based on the 24-hour period of 0800 to 0800 the following day." Defendant responded, "Defendant admits that, upon information and belief, EMS Director Lanny Bernard believed that rounding to the nearest quarter hour, authorized by 29 C.F.R. § 785.48(b), permitted the rounding down of the quarter hour at the end of the shift, during which time the outgoing shift would transfer records, drugs, equipment and vehicles to the oncoming shift, and that <u>the Director conformed his pay practices to that belief</u>." (Defendant's Responses to Plaintiffs' First Set of Requests for Admission, No. 2) (emphasis added)

11

(attached hereto as Exhibit D).

The regulations regarding rounding time do not allow systematic understatements of time worked. Section 785.48(b) allows rounding of start and stop times (both up and down) only where the small discrepancies average themselves out over time so as not to disadvantage employees: "Presumably, this arrangement [(i.e., rounding)] averages out so that the employees are fully compensated for all the time they actually work." 29 C.F.R. § 785.48(b). The regulations provide that rounding is permissible only where "it is used in such a manner that it will not result, over a period of time, in failure to compensate the employees for all the time they have actually worked." Id.

Requiring employees to work 15 minutes more than they are actually paid every shift is clearly not an acceptable use of rounding under Section 785.48(b). Defendant's practices were not implemented for the administrative convenience of avoiding trifling amounts of over- or under-payments each shift that eventually end up washing each other out. Nor is this a situation where employees are required to perform preliminary or postliminary activities outside of the clock-in and clock-out times, such as "donning and doffing" cases that have been frequently litigated under the FLSA. See, e.g., Perez v. Mountaire Farms, Inc., _____ F.3d _____, 2011 WL 2207110 (4th Cir. June 7, 2011) (copy of opinion attached hereto). The time at issue at the end of each shift is clearly part of the "continuous workday" recognized as compensable time under the FLSA. See IBP, Inc. v. Alvarez, 546 U.S. 21, 29 (citing 29 C.F.R. § 790.6(b)). Defendant's EMS Department policies required the 15-minute overlap between the off-going crew and the on-coming crew to hand off responsibility for controlled substances and to inspect the ambulances and other equipment at the shift change. (EMS Handbook, Exhibit A, at 31-33).

12

Furthermore, fifteen minutes per shift is not a <u>de minimis</u> amount of time that can be excluded from compensable work time.  <u>See</u> <u>Perez</u>, 2011 WL 2207110 (holding that 10.2 minutes per day for donning and doffing protective gear in chicken processing plan was not <u>de minimis</u>).

There is no genuine issue of material fact on the issue of whether Defendant's requiring its EMS employees to work 15 minutes per shift without compensation violates the FLSA; thus, Plaintiffs are entitled to judgment as a matter of law on this issue of liability.

### C.  Sleep-time Exemption

In the famous case of <u>Skidmore v. Swift & Co.</u>, 323 U.S. 134 (1944), the United States Supreme Court established the test for whether time spent waiting to perform actual, productive work constitutes compensable time under the FLSA: "Facts may show that the employee was engaged to wait, or they may show that he waited to be engaged. His compensation may cover both waiting and task, or only performance of the task itself."  <u>Id.</u> at 137.  It is clear that waiting time while "on duty" should be included as compensable time if "the employee is unable to use the time effectively for his own purposes."  29 C.F.R. § 785.15.  In other words, where the waiting time "belongs to and is controlled by the employer," such time is "an integral part of the job" and should be included as compensable time.  <u>Id.</u>

There are several exceptions in the FLSA to this general principle; but, again, any exceptions must be narrowly construed against the employer in light of the humanitarian, pro-labor purposes of the Act, and the employer bears the burden of proving the applicability of the exception.  <u>See</u> <u>Roy v. County of Lexington</u>, 141 F.3d at 540.

One of the main issues in this action involves the sleep-time exemption in the FLSA. Defendant's EMS Department policy provides that full-time employees who work a 24-hour shift

13

are only paid for 16 hours, with eight hours deducted for a regularly scheduled sleep time from 11:00 p.m. until 7:00 a.m.  EMS employees are paid additional amounts if the sleep period is interrupted by a call to duty.  (EMS Handbook, Exhibit A, at 13).

The basic sleep exemption is found at 29 C.F.R. § 785.22, which applies where the employee is on duty for 24 hours or more.  Under Section 785.22, a <u>bona fide</u>, regularly scheduled sleeping period of up to eight hours can be excluded from compensable time if three basic prerequisites are met: (1) there is an express or implied agreement between the employer and the employee to deduct the sleeping period from hours worked, (2) the employer provides adequate sleeping facilities, and (3) "the employee can usually enjoy an uninterrupted night's sleep."  29 C.F.R. § 785.22(a). Subsection (b) of Section 785.22 provides that if the designated sleeping period is interrupted by a call to duty, the actual interruption time must be counted as hours worked.  29 C.F.R. § 785.22(b). Subsection (b) further provides, "If the period is interrupted to such an extent that the employee cannot get a reasonable night's sleep, the entire period must be counted."  <u>Id.</u>  The final sentence of subsection (b) states, "For enforcement purposes, the Divisions have adopted the rule that if the employee cannot get at least 5 hours' sleep during the scheduled period the entire time is working time."  <u>Id.</u>  Section 785.22 was explored at length by the Fourth Circuit in the <u>Roy</u> case cited above. In <u>Roy</u>, the court merged subsections (a) and (b) together and held that the phrase "can usually enjoy an uninterrupted night's sleep" in subsection (a) means that the employee "<u>can in fact</u> enjoy at least five <u>uninterrupted</u> hours of sleep."  <u>Roy</u>, 141 F.2d at 546 (emphasis added).

Plaintiffs believe that the <u>Roy</u> case was a clear misreading of Section 785.22.  Subsection (a) defines when an employer can use the sleep-time exemption, in the first place, for any shift; subsection (b) states that where the prerequisites of subsection (a) are met, each shift must then be

14

examined to see whether sleep time can be deducted in each particular shift and, if so, how much time can be deducted. In other words, you should not even get to subsection (b) and the "5-hours' actual sleep" issue unless the employer can first establish all elements of subsection (a)–chiefly, whether "the employee can usually enjoy an uninterrupted night's sleep." Plaintiffs recognize that the <u>Roy</u> case is binding precedent, but wish to preserve their arguments for the Fourth Circuit to overrule the <u>Roy</u> holding that subsections (a) and (b) of Section 785.22 must be read together. Under the current holding of the <u>Roy</u> case on this issue, there appears to be a sharp factual dispute in this case about whether the employees in the Lancaster County EMS Department can, in fact, "usually enjoy an uninterrupted night's sleep" or whether they can "get at least 5 hours' sleep" during particular shifts for purposes of Section 785.22. These issues are not, however, the basis for Plaintiffs' motion for summary judgment on the sleep-time exemption.

This case is actually governed by the sleep-time regulation in 29 C.F.R. § 553.222, which applies to public employers who elect to pay their employees under Section 7(k) as employees in fire protection activities or law enforcement personnel. Section 553.222 incorporates the requirements of Section 785.22, with one significant exception: although Section 785.22 applies to situations where the employee is on duty for <u>24 hours or more</u>, Section 553.222 requires that the tour of duty be <u>greater</u> than 24 hours before sleep time can be deducted. Section 553.222(b) expressly provides, "Where the employer has elected to use the section 7(k) exemption, sleep time <u>cannot</u> be excluded from the compensable hours of work . . . [w]here the employee is on a <u> tour of duty of exactly 24 hours, which is a departure from the general rules in part 785</u>." 29 C.F.R. § 553.222(b)(2) (emphasis added). The distinction between Sections 553.222 and 785.22 was not an issue in the <u>Roy</u> case because the EMS workers in Lexington County were required to work shifts of 24 and 1/2 hours

15

(8:30 a.m until 9:00 a.m. on the following day), clearly greater than a 24-hour tour of duty.  <u>Roy</u>, 141 F.3d at 538.

Here, there is no genuine dispute of material fact that the plain language of Section 553.222 applies to preclude Defendant from deducting the 8-hour sleep period from compensable time.  As discussed previously, Defendant has acknowledged that it "elected" to use the Section 7(k) exemption to pay its EMS employees as if they were fire protection employees.  (<u>See</u> Defendant's Local Rule 26.03 Responses, at 1) ("The County compensated Plaintiffs for overtime based on the partial exemption for employees engaged in fire protection services found at 29 U.S.C. § 207(k) and 29 C.F.R. § 553.230.").  Also, there is no genuine dispute that the "tour of duty" of Defendant's EMS employees was 24 hours.  (<u>See</u> Defendant's Local Rule 26.03 Responses, at 1) ("Plaintiffs are current and former emergency medical technicians of Lancaster County's Emergency Medical Services Department who were scheduled for <u>24-hour tours of duty</u>.") (emphasis added).

The fact that Defendant's Section 7(k) election was unlawful or improper should not allow Defendant to avoid Section 553.222 and qualify for the more favorable rule on sleep-time found in Section 785.22.  Similarly, Defendant cannot now argue that the "tour of duty" exceeded 24 hours based on the 15 minutes of unpaid time the employees were required to work "off the clock," because Defendant did not compensate its EMS employees for those extra 15 minutes.

This case is similar to <u>Carter v. City of Charleston</u>, 995 F. Supp. 622 (D.S.C. 1997).  In <u>Carter</u>, the plaintiffs were a group of firefighter who sued under the FLSA for unpaid overtime.  The City tried to argue that it could use the sleep-time exemption in 29 C.F.R. § 553.222, because its written policy mandated shifts of 24 hours and 15 minutes, although the practice for over 12 years had been for the firefighters to work shifts of exactly 24 hours.  Judge Norton granted partial

16

summary judgment to the plaintiffs on their request that sleep time not be excluded from their compensable hours. Id. at 626. Interestingly, defendant in the Carter case actually acknowledged that the 15 minutes extra that the firefighters were supposed to work over 24 hours was not included in the plaintiffs' compensation. Id. at 626, n.4. Judge Norton reasoned that because exemptions to the overtime requirements under the FLSA are narrowly construed against employers and because the employer bears the burden of proving compliance with the exemptions claimed, the defendant in that case could not prove that it was entitled to the sleep-time exemption, even viewing the evidence in the light most favorable to the defendant as the non-moving party.

Here, there is no material dispute as to the relevant facts about whether Section 553.222 applies: (1) Defendant made the election (albeit unlawful) to pay Plaintiffs overtime under Section 7(k) as fire service employees; and (2) Plaintiffs' tour of duty was exactly 24 hours, not greater than 24 hours. Defendant should not be heard to complain that Plaintiffs are trying to argue both sides of the Section 7(k) exemption in this case. Both Section 7(k) and the sleep-time deduction are exemptions from the FLSA, which are narrowly construed against the employer, and on which Defendant as the employer has the burden of proof. A defendant should not be allowed to try to raise one exemption and then, when that is unsuccessful, try to raise other exemptions until it finds one that sticks. Pardon the pun, but Defendant made its bed on these issues and now has to lie in it (and Defendant also has to pay its EMS employees for lying in theirs during their 8-hour sleep periods). Plaintiffs respectfully submit that they are entitled to summary judgment on the sleep-time exemption issue.

## D. Set-offs for Short-Week Payments

Next, Defendant has asserted as an affirmative defense that "Plaintiffs have received wage

17

payments to which they were not entitled and for which Defendant is entitled to a setoff against any wage allegedly owed." (Answer, at 2, ¶ VIII) (attached hereto as Exhibit E). In its Interrogatory Answers on this issue, Defendant states the following:

> Defendant is informed and believes that EMS employees were paid holiday pay, extra holiday pay, and 16 hours of additional pay approximately 8 times per year for which they did no work. Defendant is entitled to set off against any overtime allegedly owed by it any premium payments that it made to employees. . . . Accordingly Defendant seeks a set-off of any premium payments received from it [sic] by EMS employees, including the premium payments aforementioned. Defendant further responds that it is informed and believes that EMS employees were credited with extra holiday pay and with the 16 hours of additional pay for which they did no work in violation of County policy and without the knowledge or consent of County management. Accordingly, Defendant is informed and believes that it is entitled to recoup such overpayments from its employees.

(Defendant's Answers to Plaintiff's First Set of Interrogatories, at 9-10, No. 18) (attached hereto as Exhibit F).

Whether or not Defendant's management knew of or consented to these alleged additional payments is likely a factual issue that would have to be sorted out through discovery and trial, if necessary. The holiday pay issue is explicitly set forth in the Lancaster County EMS Policies and Procedures Handbook, so Plaintiffs are somewhat puzzled by Defendant's claims that such payments were unauthorized by the County. (EMS Handbook, Exhibit A, at 17-18). The additional pay for 16 hours every six weeks corresponds to those pay periods in which EMS employees are scheduled for two "short weeks" in the same pay period, as discussed above. Nevertheless, any factual issues surrounding the implementation of the policy or practice of making these "short-week payments," the underlying purpose of such payments, or whether the County knew or should have known of such payments are immaterial to the instant motion for partial summary judgment.

The FLSA does not, as a matter of law, allow set-offs as claimed by Defendant. In Roland

Elec. Co. v. Black, 163 F.2d 417 (4th Cir. 1947), the Fourth Circuit clearly held that "payments in excess of the amount required by the statute to an employee for work done in certain weeks do not relieve the employer from the obligation to compensate the employee for deficiencies in other weeks." Id. at 420. The Black case involved a claim by employees of an electrical company for unpaid overtime under the FLSA. The employer defendant asserted that any liability it had for failing to pay time-and-a-half for overtime under the FLSA in some work-weeks could be offset by excess payments the company made in other weeks where the employees received a premium for working outside the company's regular business hours and by amounts the company paid to employees as year-end bonuses. The Black court refused to allow the employer's claimed set-offs for three reasons: (1) the claimed offset would violate the principle under the FLSA that each work-week must be examined independently; (2) where an employer fails to pay overtime promptly in a particular week, the statute gives rise to an immediate cause of action in favor of the employee for unpaid wages and liquidated damages; and (3) the employer is not allowed to compromise or settle claims under the FLSA without approval by the Department of Labor or a district court. Id. at 420-21. The court also observed that "the so-called excess payments in certain weeks were not made or intended to be made as compensation for overtime work within the contemplation of the Act, but as additional compensation for work done by the employees during less desirable parts of the day." Id. at 421. The Black case remains binding precedent in the Fourth Circuit on this issue.

Other federal circuit courts of appeals have similarly ruled that set-offs such as those claimed by Defendant here are not permissible under the FLSA. In Herman v. Fabri-Centers of America, Inc., 308 F.3d 580 (6th Cir. 2002), the Sixth Circuit Court of Appeals held that an employer was not entitled to off-set its overtime liability under the FLSA in certain work-weeks by "extra

19

compensation" paid to employees during other weeks pursuant to collective bargaining agreement for things like holiday pay, double time on Sundays, or time-and-a-half for more than eight hours a day. The <u>Herman</u> court interpreted 29 U.S.C. § 207(h), which allows certain credits for premium payments made by the employer, to apply only in the same work-week as the alleged deficiencies. 308 F.3d at 592. The <u>Herman</u> court actually cited with approval the Fourth Circuit's opinion in <u>Roland Elec. Co. v. Black</u>, 163 F.2d 417 (4th Cir. 1947), for the proposition that any credits may only be applied in the same work-week that they were paid. <u>Herman</u>, 308 F.3d at 591-92 (citing <u>Black</u>, 163 F.2d at 421). In other words, the employer cannot accumulate alleged over-payments and apply them retroactively or prospectively to reduce its liability for unpaid overtime under the FLSA in other weeks.

Similarly, in <u>Martin v. PepsiAmericas, Inc.</u>, 628 F.3d 738 (5th Cir. 2010), the Fifth Circuit Court of Appeals refused to allow an employer to set-off severance payments to a discharged employee against the company's liability for unpaid overtime under the FLSA. The <u>Martin</u> case chronicled the Fifth Circuit's history on this issue, beginning with <u>Brennan v. Heard</u>, 491 F.2d 1, 4 (5th Cir. 1974), which broadly held that "set-offs and counterclaims are inappropriate in any case brought to enforce the FLSA's minimum wage and overtime provisions." <u>Martin</u>, 628 F.23d at 741. The <u>Martin</u> opinion, which was written by Judge Garza, explained the subsequent holding in <u>Singer v. City of Waco</u>, 324 F.3d 813 (5th Cir. 2003) (also written by Judge Garza), which allowed a set-off, as a unique circumstance where the employer's overpayments in some weeks were essentially pre-payments for anticipated shortfalls in other weeks. <u>Martin</u>, 638 F.3d at 741-42. The <u>Martin</u> case also discussed the more recent case of <u>Gagnon v. United Technisource, Inc.</u>, 607 F.3d 1036 (5th Cir. 2010) (again written by Judge Garza), which reconciled the holdings of <u>Singer</u> and <u>Heard</u>:

> Gagnon clarified that it was the unique character of the set-offs in Singer–that they represented overtime obligations already fulfilled–that allowed for a narrow exception to the bright-line rule spelled out in Heard. We continue to look with disfavor on set-offs unless the money being set-off can be considered wages that the employer pre-paid to the plaintiff-employees.

Martin, 628 F.3d at 742; see also Howard v. City of Springfield, Ill., 274 F.2d 1141 (7th Cir. 2001) (holding that credits for premium payments and court-time payments could only be applied on a pay-period by pay-period basis, not accumulated and applied to all overtime liability for other weeks); Conzo v. City of New York, 667 F. Supp. 2d 279 (S.D.N.Y. 2009) (holding that offset for extra compensation paid to plaintiffs could not be applied cumulatively against defendant's liability for unpaid overtime).

Defendant has referred to O'Brien v. Town of Agawam, 491 F. Supp. 2d 170 (D. Mass. 2007), as authority supporting its position that it is entitled to set off alleged overpayments for short-week pay and holiday premium pay against any liability for unpaid overtime. With all due respect, the O'Brien case appears to be directly contrary to the Fourth Circuit's holding in Roland Elec. Co. v. Black, 163 F.2d 417 (4th Cir. 1947), which is binding authority on this court. The O'Brien court also relies heavily on the Singer case from the Fifth Circuit, which was dramatically limited by other Fifth Circuit cases as discussed above. Furthermore, the analysis of the district court in the O'Brien case was recently rejected by another decision from the District of Massachusetts, Rudy v. City of Lowell, _____ F. Supp. 2d _____, 2011 WL 915334 (D. Mass. Mar. 14, 2011) (holding that "cumulative offsets" are not permissible under the FLSA) (copy of opinion attached).

The more-recent cases addressing the "cumulative offset" issue have focused on Section 7(h) of the Fair Labor Standards Act, 29 U.S.C. § 207(h), which was not in existence at the time the Fourth Circuit decided Roland Elec. Co. v. Black, 163 F.2d 417 (4th Cir. 1947). Section 7(h) was

21

passed in response to the U.S. Supreme Court case of <u>Bay Ridge Operating Co. v. Aaron</u>, 334 U.S. 446 (1948), which required the employer to include contractual premiums in the "regular rate" for purposes of calculating statutory overtime, thus essentially forcing the employer to pay "overtime on overtime." <u>See</u> <u>Herman v. Fabri-Centers of America, Inc.</u>, 308 F.3d 580, 586-87 (6th Cir. 2002) (discussing legislative history of Section 207(h)).  Section 7(h) specifies what credits may be applied by the employer in determining the amount of overtime compensation due and is the only provision of the FLSA that expressly allows credits or off-sets for overtime liability.  29 U.S.C. § 207(h). Section 7(h) only addresses credits for certain amounts that are expressly excluded from the definition of "regular rate" found in 29 U.S.C. § 207(e).

Section 7(h) does not apply to the "short-week" payments at issue in this case, because those payments do not fit within the categories spelled out in 29 U.S.C. §§ 207(h)(2) and 207(e)(5)-(7). In fact, as set forth in detail below in Section III.E. of this brief, the short-week payments should actually be included in each employee's "regular rate" for purposes of calculating the overtime premium due under the FLSA.  In sum, Plaintiffs are entitled to partial summary judgment that Defendant cannot apply cumulative set-offs against its liability for unpaid overtime for amounts it allegedly overpaid Plaintiffs during the double short-week pay periods.

### E. Short-week Payments Should be Included in Plaintiffs' "Regular Rate"

The "keystone" for calculating the overtime premium due under the FLSA for working more than 40 hours in a week is the employee's "regular rate." <u>Walling v. Youngerman-Reynolds Hardwood Co.</u>, 325 U.S. 419, 424 (1945).  Section 7(a) of the Act provides that the overtime premium must be "not less than one and one-half time the regular rate at which [the employee] is employed." 29 U.S.C. § 207(a)(1).  "Regular rate" does not necessarily mean the employee's stated

22

hourly rate.  The term "regular rate" is defined in Section 7(e) generally "to include all remuneration for employment paid to, or on behalf of, the employee," subject to a list of eight categories of specific exclusions set forth in subparagraphs (1) through (8).  29 U.S.C. § 207(e) (emphasis added). Briefly, those categories of exclusions are for the following list, corresponding to the subsection of each category of exclusion: (1) gifts, including gifts paid at Christmas or other special occasions unrelated to job performance; (2) payment for occasional periods when the employee does not actually work, such as vacation, holidays, sick leave, or lack of work; reimbursements for travel expenses or other business-related expenses; and "other similar payments to an employee which are not made as compensation for his hours of employment"; (3) discretionary bonuses, payments under profit-sharing plans or thrift or savings plans, and talent fees; (4) contributions to employee benefit plans; (5) payments at a premium rate for overtime hours or extra pay for working more than 8 hours a day or beyond the employee's regular hours; (6) payments at a premium rate of at least time-and-a-half for working weekends, holidays, or the sixth or seventh day of a workweek; (7) payments at a premium rate of at least time-and-a-half , pursuant to a collective bargaining agreement or employment contract, for for work outside the normal workweek; or (8) stock grants or options.  29 U.S.C. § 207(e)(1)-(8).  Section 7(e) creates a statutory presumption that any remuneration received by an employee, in any form, should be included in the "regular rate."  If the employee's remuneration does not fall within one of the statutory exclusions, it "must be added into the total compensation received by the employee before his regular hourly rate of pay is determined."  29 C.F.R. § 778.200(c).  The burden of proof is on the employer to establish that the amount in question should be excluded from the "regular rate."  Madison v. Resources for Human Dev. Inc., 233 F.3d 175, 187 (3d Cir. 2000).

23

The "short-week" payments at issue in this case do not appear to fit within any of the exceptions listed in subparagraphs (1) through (8) of Section 7(e). The addition of the "short week" pay for full-time employees every six weeks appears to be necessary to bring the employee's actual base pay up to the annual levels promised to them based on 2080 hours of annual work. For example, Plaintiff Louis Roman was quoted an annual base starting salary of $41,298.00 when he started working for Defendant in February 2009. The e-mail from Mr. Roman to former EMS Director Lanny Bernard confirming his annual, starting salary is attached hereto as Exhibit G. To convert the stated annual salary to an hourly equivalent, the County divided the base salary by 2080 hours, which yields an hourly rate of $19.85. Mr. Roman's Terms of Employment Notice is attached hereto as Exhibit H. Under the County's compensation plan at the time, if employees were expected to work a schedule of 24-hours on–48 hours off, with the full 8-hour deduction for sleep pay each shift (or 16-hours pay per shift), the employees would only work 1952 hours per year, rather than the 2080 hours. The short-week pay of an additional 16 hours every six weeks was necessary to bring the employee up to the equivalent of 2080 hours per year. In other words, the "regular rate," including the short-week pay, would increase by a factor of 106.667%. An illustration of this calculation is attached at Exhibit I. If the "short-week" payments are included, Mr. Roman's stated hourly rate of $19.65 would equate to a regular rate of $20.96, which is the figure that should be used to calculate his overtime pay during the relevant period.

The only exception in Section 7(e) that could even arguably apply to the "short week" payments is the "catch-all" language of subsection (e)(2): "other similar payments to an employee which are not made as compensation for his hours of employment." 29 U.S.C. § 207(e)(2). The Department of Labor's regulations interpreting this catch-all category of payments in subsection

24

(e)(2) provide some guidance on this issue and appear to foreclose Defendant's argument that the "short-week" payments are excludable under this provision. The regulations provide that the catch-all category of payments must be of a similar nature to the payments specifically described in the prior clauses of subsection (e)(2). 29 C.F.R. § 778.224(a). The regulations give three examples of payments excluded as "other similar payments" under subsection (e)(2): "(1) Sums paid to an employee for the rental of his truck or car. (2) Loans or advances made by the employer to the employee. [And] (3) The cost to the employer of conveniences furnished to the employee such as parking spaces, restroom, lockers, on-the-job medical care and recreational facilities." 29 C.F.R. § 778.224(b). The "short week" payments at issue here appear to be more similar to non-discretionary bonuses or room-and-board, "which, though not directly attributable to any particular hours of work are, nevertheless, clearly understood to be compensation for services," 29 C.F.R. § 778.224(a), and must, therefore, be included in the employee's "regular rate" for purposes of calculating overtime pay.

Whether or not to include the "short-week" payments in Plaintiffs' "regular rate" is a legal question that does not depend on the resolution of any disputed issues of fact. Accordingly, Plaintiffs respectfully request that the Court grant partial summary judgment in favor of Plaintiffs on this issue.

## IV.  Conclusion

For all of the forgoing reasons, Plaintiffs respectfully request that the Court grant partial summary judgment in favor of Plaintiffs on the five issues discussed above.

Respectfully submitted,


 s/ David E. Rothstein
David E. Rothstein, Fed. ID No. 6695
ROTHSTEIN LAW FIRM, PA
514 Pettigru Street
Greenville, South Carolina 29601
(864) 232-5870 (O)
(864) 241-1386 (Facsimile)
derothstein@mindspring.com

Attorney for Plaintiffs

July 25,  2011

Greenville, South Carolina.

Kevin Faile et al. etc. v. Lancaster County, South Carolina,
C/A No. 0:10-cv-2809-CMC

Index of Exhibits to Plaintiffs' Motion for Partial Summary Judgment

| Exhibit No. | Description |
|---|---|
| A | Lancaster County EMS Policies & Procedure, Excerpts |
| B | Defendant's Local Rule 26.03 Responses |
| C | Affidavit of Kevin Faile |
| D | Defendant's Responses to Plaintiffs' First Set of Requests for Admissions |
| E | Defendant's Answer |
| F | Defendant's Answers to Plaintiffs' First Set of Interrogatories |
| G | Plaintiff Roman E-mail to L. Bernard Confirming Starting Salary |
| H | Plaintiff Roman's Terms of Employment Notice |
| I | Shift Illustration with Short-Week Payments |

Unpublished Decisions

- Chavez v. City of Katy, 2005 WL 1657037 (S.D. Tex. Jul. 14, 2005)

- Perez v. Mountaire Farms, Inc., ____ F.3d ____, 2011 WL 2207110 (4th Cir. June 7, 2011)

- Rudy v. City of Lowell, ____ F. Supp. 2d ____, 2011 WL 915334 (D. Mass. Mar. 14, 2011)