IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
ROCK HILL DIVISION

| | | |
|---|---|---|
| Kevin Faile, Louis C. Roman, Alan R. DePalma, and Brian Scott Craton, all individually and on behalf of all other similarly situated individuals, | ) ) ) ) ) | Civil Action No. 0:10-cv-2809-CMC |
| Plaintiffs, | ) ) | **ORDER APPROVING SETTLEMENT AGREEMENT, APPORTIONMENT** |
| vs. | ) ) | **OF SETTLEMENT PROCEEDS, AND ATTORNEY'S FEES AND COSTS** |
| Lancaster County, South Carolina, | ) ) | |
| Defendant. | ) ) | |
| _____ | ) | |

This matter is before the court on Plaintiffs' Motion for Settlement Approval (Dkt. No. 84) and Motion for Attorney's Fees and Costs (Dkt. No. 88). Defendant, Lancaster County, South Carolina ("County" or "Defendant"), consents to the relief sought in both motions. For the reasons set forth in detail below, and after careful review of the documents submitted by the parties in support of Plaintiffs' motions, the court hereby approves the settlement of this matter, including the apportionment of the settlement proceeds and the payment of attorney's fees and costs to Plaintiffs' counsel.

## I. Procedural History

This is a lawsuit under the Fair Labor Standards Act ("FLSA") and the South Carolina Payment of Wages Act ("State Wages Act") to recover unpaid overtime compensation and to recover compensation for "off the clock" work required by Defendant. Plaintiffs filed the Complaint on October 29, 2010, as a collective action under Section 16(b) of the FLSA and also as a traditional class action under Rule 23 of the Federal Rules of Civil Procedure for alleged violations of the State Wages Act. The court granted Plaintiffs' Motion for Class Certification on August 25, 2011, and established a deadline of October 31, 2011, for potential class members to file consent forms to opt

in to the collective action under the FLSA claims or to file opt out forms to exclude themselves from the state-law claim. (Docket No. 56). A total of fifty-eight individuals, including the four named Plaintiffs, filed opt-in forms prior to the deadline. No opt-out forms were filed.

Plaintiffs and members of the Plaintiff class are paramedics and emergency medical technicians ("EMTs") currently or formerly employed by the Lancaster County Emergency Medical Services ("EMS") Department. Plaintiffs' lawsuit challenges several aspects of the payroll policies and practices of Defendant's EMS Department that existed prior to late October 2010. First, Plaintiffs assert that Defendant's use of the "fire-fighter exemption" under Section 7(k) of the FLSA, paying overtime to its employees only after they worked more than 106 hours during a two-week pay period, rather than after forty hours every workweek, was unlawful under the FLSA. Second, Plaintiffs challenge Defendant's routine deduction of an eight-hour sleeping period from each twenty-four-hour shift as unlawful under regulations of the FLSA. Third, Plaintiffs complain that Defendant required twenty-four-hour shift employees of the EMS Department to work fifteen minutes beyond the scheduled end-time of every shift, without compensation.

On July 25, 2011, Plaintiffs filed a motion for partial summary judgment on all three aspects of Plaintiffs' claims. Defendant conceded that its use of the fire-fighter exemption in Section 7(k) was unlawful because the Defendant's EMS employees are not considered fire-fighters under the applicable regulations. Defendant also conceded that its requirement that each employee work fifteen minutes off-the-clock each shift was unlawful. Accordingly, on September 21, 2011, the court granted Plaintiffs' motion for partial summary judgment with respect to those two issues, but denied the motion as to the other issues without prejudice. This left a number of unsettled legal and factual issues, primarily involving the propriety of the sleep-time exemption and how Plaintiffs'

overtime compensation should be calculated.

In light of the sharply contested issues that remained unsettled, the parties agreed to participate in mediation. The parties had previously attempted an early mediation in the case on June 20, 2011. After the first mediation ended in an impasse, the parties commenced discovery in earnest and Plaintiffs retained expert witnesses to review and evaluate the wage and hour records of Defendant's EMS Department.

The parties refined the issues in dispute through extensive discovery, including several sets of interrogatories, thirteen depositions, and the production and review of over 9,000 pages of documents and voluminous computerized payroll and work records. After completing this discovery, the parties participated in a second mediation, on December 21, 2011. The parties reached a settlement agreement after extensive, arms-length negotiations, subject to approval by the court.

On January 16, 2012, Plaintiffs filed a Consent Motion to Approve Settlement Agreement, to Authorize Notice to Class, and to Schedule Fairness Hearing, with supporting memorandum of law, affidavits of Plaintiffs and Plaintiffs' counsel, and a proposed notice to the class. Plaintiffs' counsel submitted a supplemental brief on January 19, 2012, containing a detailed explanation of the calculations of the potential damages in this case and how the proposed settlement apportionment was determined. Plaintiffs filed their Motion to Approve Attorney's Fees and Costs on January 25, 2012, with supporting memorandum of law, affidavits, and other documents.

On January 25, 2012, the court entered an order granting preliminary approval of the settlement agreement and directing that notice of the proposed settlement be provided to all Plaintiffs and potential members of the Plaintiff class. The court also established a deadline of

February 27, 2012, for anyone to file a comment or objection to the proposed settlement.  The court scheduled a settlement fairness hearing for March 8, 2012, to provide all parties affected by the proposed settlement an opportunity to be heard about the terms of the settlement.

The court ordered Plaintiffs' counsel to post certain information about the settlement on his website (www.rothsteinlawfirm.com) on or before January 27, 2012, which was done.  The court also ordered Defendant to mail Notices of the Settlement, along with individualized letters describing the amount of any payment the class member would receive under the proposed settlement, to each Plaintiff or potential Plaintiff.  Pursuant to the court's order, on February 7, 2012, Plaintiffs' counsel filed, under seal, detailed information regarding the amount each class member would receive under the terms of the settlement.  Defendant's counsel thereafter filed two status reports confirming that the required mailings of the notices and individual letters had been made and that any notices returned as undeliverable were appropriately researched and remailed to updated addresses.

Only one individual filed a comment/objection form before the February 27 deadline; however, that individual failed to indicate whether he supported or opposed the settlement, and he left blank the section of the form requesting a detailed explanation of his comments or objections. He also indicated that he did not plan to attend the settlement fairness hearing and did not wish to address the court in person.  No objections were raised at the final fairness hearing.

## II.  Proposed Settlement Terms

The proposed Settlement Agreement provides that Defendant will make a gross payment of $1.5 million in complete settlement of this action.  Defendant will, in addition, be responsible for certain payroll-related expenses for amounts paid as back pay.

Plaintiffs proposed, and Defendant agreed not to contest, the following apportionment of the

4

settlement proceeds: (1) $500,000 for attorney's fees; (2) $35,000 for reimbursement of costs; (3) $67,500 as service or incentive payments to the named Plaintiffs and the members of the Plaintiffs' Steering Committee, with individual amounts of $18,000 each for the two lead Plaintiffs, $9,000 each for the other two named Plaintiffs, and $4,500 each for the remaining three members of the Plaintiffs' Steering Committee; (4) payment of 100% of the state-law claims to all members of the Plaintiff class (opt-in and non-opt-out) who worked off-the-clock at the end of each twenty-four-hour shift during the three-year period covered by the suit and who have not already received back-pay payments from Defendant since the commencement of this action; (5) payment of 100% of the opt-in Plaintiffs' back-pay claims under section 7(k) of the FLSA for three years; and (6) the remaining settlement proceeds paid to opt-in Plaintiffs based on their pro-rata share of the potential value of the collective group's FLSA back-pay claims under the best-case scenario, including sleep-time, as calculated by Plaintiff's expert economist. The parties agreed that all payments to class members (FLSA or state-law) will be apportioned 50% to back pay, subject to payroll withholdings and retirement contributions, and 50% to liquidated damages not subject to withholdings but treated as taxable, non-wage compensation. The parties further agreed that the service or incentive payments to the named Plaintiffs and members of the Plaintiffs' Steering Committee will not be subject to withholding as backpay, but would be treated as non-wage compensation.

### III. Discussion

Settlements of class actions under Rule 23 of the Federal Rules of Civil Procedure and collective actions under the FLSA require court approval. Rule 23(e) provides that "a class action shall not be dismissed without approval of the court." Fed. R. Civ. P. 23(e). A court's primary concern in evaluating a proposed class action settlement is protecting absent class members whose

5

rights are affected by the proposed settlement, but who were not direct participants in the settlement negotiations. *Kovacs v. Ernst & Young (In re Jiffy Lube Securities Litigation)*, 927 F.2d 155, 158 (4th Cir. 1991). The court must, therefore, ensure that the interests of all class members have been adequately protected and must be convinced that the settlement is "fair, reasonable, and adequate." *Wineland v. Casey's General Stores, Inc.*, 267 F.R.D. 669, 676 (S.D. Iowa 2009). Although the Fourth Circuit has not directly articulated the standard for approving a settlement under the FLSA, district courts within the Fourth Circuit have incorporated the standard generally applied in evaluating settlements of Rule 23 classes. *See Hoffman v. First Student, Inc.*, 2010 WL 1176641, *2 (D. Md. Mar. 23, 2010) (unpublished); *Lomascolo v. Parsons Brinckerhoff, Inc.*, 2009 WL 3094955, *11 (E.D. Va. Sept. 28, 2009) (unpublished).

The Fourth Circuit has articulated a well-established test to determine whether a proposed class-action settlement should be approved, which includes consideration of the following factors: (1) the extent of discovery conducted, (2) the stage of the proceedings, (3) the absence of bad faith or collusion in the settlement, and (4) the experience of counsel who has represented plaintiffs in the settlement negotiations. *Flinn v. FMC Corp.*, 528 F. 2d 1169, 1173 (4th Cir. 1975); *In re Jiffy Lube*, 927 F.2d at 158-59. Other courts within the Fourth Circuit have assessed the substantive fairness of class action settlements using factors applied in *City of Detroit v. Grinnell Corp.*, 495 F.2d 448 (2d Cir. 1974), *abrogated on other grounds by Goldberger v. Integrated Resources, Inc.*, 209 F.3d 43 (2d Cir. 2000) (addressing award of attorneys' fees). *See South Carolina Nat'l Bank v. Stone*, 749 F. Supp. 1419, 1423 (D.S.C. 1990) (citing *Grinnell*, 495 F.2d 448). The *Grinnell* case was also cited with approval by the Fourth Circuit in *Flinn*. 528 F.2d at 1172-73. The so-called *Grinnell* factors are: (1) the complexity, expense and likely duration of the litigation; (2) the reaction

of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendant to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation. *Grinnell*, 495 F.2d at 463.

Approval of settlements in collective actions under the FLSA generally involves less stringent standards than Rule 23 class settlements. *Clark v. Ecolab, Inc.,* 2010 WL 1948198, * 7 (S.D.N.Y. 2010) (noting that "an FLSA settlement does not implicate the same due process concerns as does a Rule 23 settlement").[1] "Courts approve FLSA settlements when they are reached as a result of contested litigation to resolve *bona fide* disputes." *Id.* (citing *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1353 n.8 (11th Cir. 1982)). However, because the present action involves both an FLSA collective action and a Rule 23 class action, the court will apply the more stringent standard.

Courts greatly favor the settlements of cases and allowing litigants to achieve their own resolution of disputes. *Lomascolo*, 2009 WL 3094955, at *10. Although the district court has broad discretion in approving a settlement of a class action case, there is a "strong presumption in favor of finding a settlement fair." *Id.* A "settlement [fairness] hearing is not a trial, and [the] court's role is more a 'balancing of likelihoods rather than an actual determination of the facts and law[.]" *Id.* The court "is entitled to rely on the judgment of experienced counsel for the parties in performing

---

[1]  The different due process considerations presumably arise from the distinction between an opt-in collective action and an opt-out class action.

this balancing . . . and absent fraud, collusion or the like, [the] court should be hesitant to substitute its own judgment for that of counsel." *Id.*

### A. Procedural Fairness

Approval of a class settlement requires the court to ensure that both procedural and substantive fairness are achieved. Procedural fairness is accomplished by providing court-approved notice of the proposed settlement to those whose rights may be affected by the settlement and by affording them an opportunity to be heard regarding the settlement. Here, the proposed notice previously approved by the court plainly described the terms of the proposed settlement and informed the members of the Plaintiff class of their rights to be heard at the fairness hearing. Notice of the class action was sent to potential class members who had not yet opted in to the case. Defendant's human resources department mailed the initial class notice to each potential class member who had not yet opted in to the case, at his or her last known address. Only five of the original class notices were returned undeliverable. Of the five undelivered notices, only one person appears to have a potential claim for unpaid overtime or other compensation. It is, however, clear that this person actually received notice of the settlement, because he was the sole individual who submitted a comment/objection form.

Defendant's counsel certified that the notice of the proposed settlement was mailed to all opt-in class members and to any current or former employees of Defendant's EMS Department who were potentially members of the Plaintiff class under Rule 23. Attached to each notice was an individualized letter explaining the range of potential damages for the class as a whole and how each class member's proportionate share of the damages was calculated. Although a few notices were initially returned, all were remailed and it appears all class members ultimately received actual

8

notice.

### B.  Substantive Fairness

The substantive fairness prong of the court's evaluation of the settlement focuses on whether the settlement is "reasonable, adequate and fair."  Applying the *Flinn* factors to this case confirms that the settlement is appropriate and in the best interests of the class as a whole.

First, as set forth in the Affidavit of Plaintiffs' Counsel, David E. Rothstein, both sides conducted extensive discovery in this case.  The second mediation occurred two days before the discovery deadline expired under the amended scheduling order.  Sufficient discovery was conducted in this case to make both sides fully aware of the factual issues in the case.

Second, with regard to the stage of the proceedings, the settlement of this case occurred after extensive efforts to narrow the scope of the disputed legal and factual issues.  Plaintiffs filed a motion for partial summary judgment on a number of legal issues in this case.  That motion was granted in part and denied in part without prejudice.  Defendant also filed a motion in limine that raised substantive legal issues, which was denied by the court without prejudice.  The settlement was reached after fourteen months of litigation that had narrowed and defined the legal and factual issues as clearly as possible.

Third, there is no evidence that the settlement was reached through fraud or collusion between counsel or the parties.  The second mediation was conducted before an attorney mediator who has extensive experience in labor and employment law, both as a practitioner and as a mediator, and the proposed Settlement Agreement was reached after extensive, *bona fide*, arms-length negotiations.  The decisions made on behalf of Plaintiffs were made by a Steering Committee after thorough debate and deliberation.  There is no evidence that the settlement was affected by any

improper considerations, such as undue influence, collusion, duress, intimidation, or coercion. *See* Rothstein Affidavit, ¶¶ 15-17.

Next, the settlement agreement was adopted by Plaintiffs at the recommendation of their counsel, who has significant experience in employment and labor law in South Carolina. As set forth in his Affidavit, Plaintiffs' counsel's legal career has involved almost nineteen years' experience, primarily in employment and labor law. He has been a Certified Specialist in Employment and Labor Law by the South Carolina Supreme Court since February 2006, and was recertified in 2011. He has been involved in other class action matters, both under Rule 23 of the Federal Rules of Civil Procedure and the FLSA. Counsel's specialized experience supports deference to his judgment regarding the benefits of the settlement. *See generally Lomascolo* (discussed *supra*).

Fourth, the proposed settlement has been approved by all members of the Plaintiffs' Steering Committee. Significantly, no objections to the settlement were raised by any Plaintiff or member of the Plaintiff class before or during the settlement fairness hearing.[2]

Finally, the settlement amount is adequate when viewed against the risks, expenses, and delays inherent in continued litigation. As Plaintiffs repeatedly noted, the most hotly-contested issue in the case was the sleep-time issue, which was by far the largest portion of the best-case scenario amount as calculated by Plaintiffs' economic expert. The current Fourth Circuit precedent on this issue appears to support Defendant's contention that it was entitled to deduct sleep-time under 29 C.F.R. § 785.22. *See Roy v. Lexington County, South Carolina*, 141 F.3d 533, 546-47 (4th Cir.

---

[2] As noted above, one objection form was returned. However, that form contained no actual objection. The court, therefore, finds that this form fails to state an objection to the settlement.

10

1998).  Although it would certainly be possible for Plaintiffs to receive a higher recovery after trial, it would also be possible for Plaintiffs to receive a lower net recovery after trial, especially considering the expense and delay inherent in continued litigation and possible appeals.  In light of all of these risks, Plaintiffs' counsel and Steering Committee appear to have made a reasonable decision to settle this case for the terms set forth in the proposed Settlement Agreement.

### 1.  Payments to Individual Class Members

The court finds that the $1.5 million total proposed settlement amount is a fair, adequate, and reasonable resolution of this claim.  The total settlement amount is within the mid-range of potential outcomes in this case as calculated by the parties' expert witnesses.  Plaintiffs' economic expert, Dr. Jeffrey Yankow, performed detailed calculations of Defendant's back-pay liability based on the available work records and payroll records for each potential member of the Plaintiff class.  Dr. Yankow's calculations ranged from a low-end of $353,910.91 in back pay to a high-end of $2,168,591.70, depending on different factual and legal assumptions.  Approximately $1.6 million of the high-end number was attributed to the sleep time claim, which was the most hotly-contested issue in the case.  Defendant's economic expert calculated Defendant's back-pay liability as $353,437.25, without assigning any potential value to the sleep time claim.

The proposed settlement figure of $1.5 million is a fair settlement value of this case because it is well within the range of potential outcomes for the Plaintiff class, given the unresolved legal and factual issues in the case.  The proposed settlement apportionment will actually pay every underpaid member of the Plaintiff class 100% of the value of their backpay award on the state-law claims at each employee's time-and-a-half overtime rate.  In addition, all opt-in Plaintiffs will receive 100% of their 3-year back-pay amounts under section 7(k) of the FLSA at one-and-a-half

times the higher "true" hourly rate, even after the payment of attorney's fees, costs, and service or incentive payments to the named Plaintiffs and the members of the Plaintiffs' Steering Dommittee.

Whatever sums remain after payment of fees, costs, incentive payments and the allocations above will be distributed to the opt-in Plaintiffs on a pro-rata basis determined by comparing the potential value of the collective group's FLSA back-pay claims to the potential value of the individual's back-pay claims, *under the best-case scenario.* That best-case scenario includes payment for all sleep time as calculated by Plaintiff's expert economist. While this final aspect of the distribution will amount to a relatively small percentage of the amount sought for sleep time (and other aspects of the FLSA claim beyond the 7(k) claim), the amount to be paid is not unreasonable in light of the lower probability of success on this aspect of the FLSA claim.

## 2. Attorney's Fees and Costs

The proposed apportionment of the settlement provides for attorney's fees of one-third of the gross amount of the common settlement fund, or a total of $500,000 for attorney's fees, plus $35,000 for reimbursement of actual costs in connection with the case. As discussed below, these amounts are fair and reasonable under the applicable standards for reviewing attorney fee awards in such cases.

Attorney's fees in class action cases under Rule 23 of the Federal Rules of Civil Procedure, as well as collective actions under FLSA, are subject to court approval. Rule 23(h) provides, in relevant part, "[i]n a certified class action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h). Both the FLSA and the State Wages Act contain fee-shifting provisions. 29 U.S.C. § 216(b) ("The

12

court in such action shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action."); S.C. Code Ann. § 41-10-80(C) ("In case of any failure to pay wages due to an employee as required by Section 41-10-40 or 41-10-50 the employee may recover in a civil action an amount equal to three times the full amount of the unpaid wages, plus costs and reasonable attorney's fees as the court may allow."). The gross settlement amount of $1.5 million was intended by the parties to include Defendant's liability for attorney's fees and costs.

There are two general methods for assessing awards of attorney's fees in class action settlements: (1) the percentage-of-the-fund method and (2) the lodestar method. The percentage-of-the-fund method, also known as the common fund doctrine, allows attorney's fees to be based on a percentage of the total recovery to the plaintiff class. *See Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980). The common fund doctrine recognizes that where a group of individuals receives a benefit from litigation without directly contributing to its costs, the group would be unjustly enriched unless each member is required to contribute a portion of the benefits to compensate the attorney(s) responsible for creating or enhancing the common fund. The trend among most courts seems to be toward favoring the percentage-of-the-fund approach in class action cases, because it "better aligns the interests of class counsel and class members [by tying] the attorneys' award to the overall result achieved rather than the hours expended by the attorneys." *Kay Co. v. Equitable Production Co.*, 749 F. Supp. 2d 455, 461-62 (S.D. W. Va. 2010). The percentage-of-the-fund approach rewards counsel for efficiently and effectively bringing a class action case to a resolution, rather than prolonging the case in the hopes of artificially increasing the number of hours worked on the case to inflate the amount of attorney's fees on an hourly basis. *Id.* at 462.

The lodestar method determines the appropriate amount of attorney's fees by applying the well-established factors from the seminal case of *Barber v. Kimbrell's, Inc.*, 577 F.2d 216 (4th Cir. 1978), to determine a "lodestar" figure by multiplying the number of hours expended by class counsel times a reasonable hourly rate. *See* Local Civil Rule 54.02(A), D.S.C. The lodestar method is used to award attorney's fees to successful plaintiffs after obtaining a judgment at trial in a fee-shifting case. *See Hensley v. Eckerhart*, 461 U.S. 424 (1983). Many courts that have used the percentage-of-the-fund method also use a modified form of the lodestar method to perform a "cross-check" to ensure that the percentage award is fair and reasonable.

The Fourth Circuit has not issued any definitive guidance about which methodology is preferred for awarding or approving attorney's fees in class action cases. Kay Co., 749 F. Supp. 2d at 463. District courts do, however, have considerable discretion in evaluating the reasonableness of an attorney's fee award. *Id.* Numerous district courts within the Fourth Circuit have used the percentage-of-the-fund method, and many have also employed the lodestar cross-check, in setting attorney's fees in class action settlements. *See id.* at 463-64, nn. 3-4 (citing cases); *Domonoske v. Bank of America, N.A.*, 790 F. Supp. 2d 466 (W.D. Va. 2011) (approving attorney's fees of 18% of common fund in FCRA class action, amounting to $1.791 million of $9.95 million common fund, and noting that a percentage "at the low end of recoveries of attorney's fees" was appropriate in light of the "lack of complexity [of the case] and the brevity of discovery"); *Smith v. Krispy Kreme Doughnut Corp.*, 2007 WL 119157 (M.D.N.C. Jan. 10, 2007) (approving attorney's fees of 26% of common fund in ERISA class action, amounting to $1.235 million of $4.75 million cash common fund) (unpublished).

### a.  Percentage of Fund

Plaintiffs' counsel has requested that the court use the percentage-of-the-fund method for approving attorney's fees in this case.  Specifically, counsel asks the court to approve an attorney's fee of one-third (33.33%) of the gross settlement fund, or $500,000 of the $1.5 million total settlement.

In evaluating the reasonableness of attorney's fees under the common fund doctrine in class action cases, courts generally examine the following factors: "(1) the results obtained for the class, (2) the quality, skill, and efficiency of the attorneys involved, (3) the complexity and duration of the case, (4) the risk of nonpayment, (5) awards in similar cases, (6) objections, and (7) public policy." *Kay Co.*, 749 F. Supp. 2d at 464; *see also In re Cendant Corp. Prides Litig.*, 243 F.3d 722, 733 (3d Cir. 2001) (stating factors as "(1) the size of the fund created and the number of persons benefitted; (2) the presence or absence of substantial objections by members of the class to the settlement terms and/or fees requested by counsel; (3) the skill and efficiency of the attorneys involved; (4) the complexity and duration of the litigation; (5) the risk of nonpayment; (6) the amount of time devoted to the case by plaintiffs' counsel; and (7) the awards in similar cases").  Application of these factors demonstrates that the request of Plaintiff's counsel for one-third of the gross settlement proceeds for attorney's fees is fair and reasonable.

### i.  Result Obtained for the Class

The settlement reached in this case represents a substantial recovery on behalf of the Plaintiff class.  As discussed above, the proposed settlement enables all Rule 23 class members to receive 100% of their back-pay amount under the State Law Claim, and it enables all opt-in Plaintiffs to receive 100% of their back-pay amount under the Section 7(k) component of their FLSA claim, plus

15

a substantial percentage of their remaining claims under the FLSA, even after payment of attorney's fees, costs, and service payments to the members of the Plaintiffs' Steering Committee.

### ii.  Quality, Skill and Efficiency of Attorney Involved

Plaintiffs' counsel is Plaintiffs' only attorney of record in this case.  He is a solo practitioner in Greenville, South Carolina with extensive experience in employment law.  The motion for attorney's fees is supported by affidavits of two noted South Carolina employment law attorneys who have offered favorable opinions about his abilities and reputation with respect to employment litigation.

The two lead Plaintiffs (Faile and Roman), and a member of the Plaintiffs' Steering Committee (Helen Ortega), submitted affidavits stating that they have been satisfied with the legal services performed by Plaintiffs' counsel, and they fully support the requested allocation for attorney's fees and costs.  These considerations support the requested attorney's fee award.

### iii.  Complexity and Duration of Case

This case was complex, involving several technical aspects of the FLSA and related regulations.  In addition, the hybrid nature of the class-action component of this case added a layer of complexity requiring significant legal research, analysis, and briefing.  The case has been pending since October 29, 2010, and was filed two days after Plaintiffs' counsel was retained by Plaintiffs Faile and Roman.  During the sixteen months that this case has been pending, Plaintiffs' counsel has expended considerable effort in prosecuting this action, as set forth in the Affidavit of David Rothstein and attached time records.

### iv.  Risk of Non-payment

Plaintiffs' counsel agreed to handle the case on a contingency fee basis.  The contingency nature of the fee agreement puts a substantial risk of loss on Plaintiffs' counsel, because he does not

get paid unless he is successful in obtaining some recovery in the case on behalf of Plaintiffs.

With regard to the ability of Defendant to respond to a potential judgment in this case, because Defendant is a public body, there is less risk of non-payment than with many private employers. Plaintiffs' counsel conceded that he is not aware of any significant fiscal problems within Lancaster County that would affect Defendant's ability to pay a settlement or judgment. Accordingly, the risk of inability to pay is not a significant factor in the court's assessment of the attorney's fees requested in this case.

### v. Awards in Similar Cases

One-third of the recovery appears to be a fairly common percentage in contingency fee cases, especially where the total settlement amount is not so large as to produce a windfall to Plaintiffs' attorney(s) based solely on the number of class members. In *Clark v. Ecolab, Inc.*, 2010 WL 1948198 (S.D.N.Y. May 11, 2010) (unpublished), the court noted that an attorney's fee percentage of one-third was "reasonable and 'consistent with the norms of class litigation in [the Second] circuit.'" Id. at *8. The *Clark* court approved attorney's fees of $2 million or one-third of the common fund, in a collective action under the FLSA. *Id.*; *see also Wineland v. Casey's Gen. Stores, Inc.*, 267 F.R.D. 669, 677 (S.D. Iowa 2009) (approving attorney's fees of 33 1/3% of total settlement fund of $6.7 million, plus $150,000 in costs, in FLSA collective action on behalf of class of approximately 11,400 convenience store employees).

Similarly, in *Smith v. Krispy Kreme Doughnut Corp.*, 2007 WL 119157 (M.D.N.C. Jan. 10, 2007) (unpublished), the court noted, "[i]n this jurisdiction, contingent fees of one-third (33.3%) are common." *Id*. at *2-3 (approving a 26% fee under the lodestar cross-check method, which produced a risk multiplier of 1.6 over the lodestar amount).

In *Bredbenner v. Liberty Travel, Inc.*, 2011 WL 1344745 (D.N.J. Apr. 8, 2011) (unpublished), the court cited to cases from district courts throughout the country in common fund cases where attorney's fee awards "generally range anywhere from nineteen percent (19%) to forty-five percent (45%) of the settlement fund." *Id.* at *21. Most of the cases cited in *Bredbenner* awarded attorney's fees in the 30-34% range. *Id.* at *18, *21-22 (approving payment of $990,000 in fees and costs from a total settlement fund of $3,000,000 where fees constituted a 1.88 multiplier over lodestar calculation); *see also Hoffman v. First Student, Inc.,* 2010 WL 1176641 *3 (D. Md. Mar. 23, 2010) (unpublished) ( approving attorneys' fee award of one-third of the total class recovery and noting that this was the fee called for in the lead class members' agreement with counsel and "appropriately reflect[ed] the time spent and expenses incurred by Plaintiffs' counsel in this litigation" ).

Ms. Burnette avers in her affidavit that a one-third contingency fee percentage is reasonable and customary in employment cases in South Carolina. (Burnette Affidavit, ¶ 6). This factor and the case law summarized above support approval of Plaintiffs' attorney fee request.

### vi.  Absence of Objections

The named Plaintiffs' contingency fee agreements with the undersigned counsel provide for attorney's fees of  one-third of the total recovery.  Although the court is not bound by the parties' agreements in this regard, the amount is reasonable and fair in light of the relatively small size of the Plaintiff class and the amount of work required by the case.  Furthermore, as discussed above, Plaintiffs Faile and Roman and Steering Committee Member Helen Ortega have submitted affidavits supporting the proposed attorney's fee payment.

Perhaps most significantly, no member of the Plaintiff class submitted any objection to the requested apportionment for attorney's fees. Accordingly, this factor also supports approval of the requested amount.

### vii.  Public Policy

In the court's experience, employment cases do not appear to be eagerly sought out by the majority of the plaintiffs' bar in South Carolina because of the difficulty of the cases and the complexity of the issues usually involved. In situations like this case, where each individual's economic damages may be relatively modest and where the employee victims usually do not have the resources to pay substantial attorney's fees and costs in advance, obtaining counsel would be extremely difficult were it not for the statutory provisions for attorney's fees and costs for prevailing parties and potential for recovering a fee which represents some enhancement over regular hourly rates. Therefore, public policy favors adequate awards of attorney's fees in cases under the FLSA to encourage aggrieved plaintiffs to bring these actions and to provide incentives for plaintiffs' counsel to take such cases. The court has not been made aware of any adverse public policy concerns raised by Plaintiffs' attorney's fee request.

### b.  Lodestar Cross-Check

Many courts that employ the common fund doctrine in evaluating attorney's fee requests under class settlements compare the percentage of the fund to the lodestar calculation as a "cross-check" to ensure that the percentage amount is fair and reasonable. The lodestar is defined as "the number of hours reasonably expended, multiplied by a reasonable hourly rate." *Rum Creek Coal Sales, Inc. v. Caperton*, 31 F.3d 169, 174 (4th Cir. 1994). In fee-shifting cases, the lodestar amount is generally considered the presumptively reasonable fee in a case that is successfully litigated to

judgment. *See Alexander S. v. Boyd*, 929 F. Supp. 925, 932 (D.S.C. 1995), *aff'd* 89 F.3d 827 (4th Cir. 1996). The lodestar figure may be adjusted upward or downward to account for exceptional circumstances, such as the results obtained or the quality of the representation. *Id.*

The standard for determining a reasonable figure for attorney's fees is set forth in the familiar Fourth Circuit case of *Barber v. Kimbrell's, Inc.*, 577 F.2d 216 (4th Cir. 1978); *see* Local Civil Rule 54.02, D.S.C. (expressly incorporating the *Barber v. Kimbrell's, Inc.* factors):

> (1) the time and labor expended; (2) the novelty and difficulty of the questions raised; (3) the skill required to properly perform the legal services rendered; (4) the attorney's opportunity costs in pressing the instant litigation; (5) the customary fee for like work; (6) the attorney's expectations at the outset of the litigation; (7) the time limitations imposed by the client or circumstances; (8) the amount in controversy and the results obtained; (9) the experience, reputation, and ability of the attorney; (10) the undesirability of the case within the legal community in which the suit arose; (11) the nature and length of the professional relationship between attorney and client; and (12) attorneys' fees awards in similar cases.

*Barber*, 577 F.2d at 226, n.28. The *Barber* factors are discussed in order below, although many of them overlap with the previous discussion about the fairness of the percentage-of-the-fund method.

### i. Time and labor expended

According to the affidavit of David E. Rothstein, Plaintiffs' counsel has expended over 1,190 hours of attorney time in connection with this matter. Plaintiffs' counsel estimated that he would spend an additional twenty to thirty hours of time after January 24, 2012, in connection with the settlement approval hearing and ensuring that the settlement proceeds are distributed properly. Plaintiffs' counsel's legal assistant has also spent over 35.6 hours of time in connection with this case.

Mr. Rothstein began representing Plaintiffs in this case in late October 2010. As noted previously, this case involved significant discovery and motions practice, both on the class certification aspects of the case and the merits of the claims.

The affidavit of Ms. Burnette, discussed above, as well as the affidavit of Mr. Murphy, support a finding that the amount of time and labor expended in this case was reasonable.

### ii.  Novelty and Difficulty of the Questions Raised

In the court's experience, overtime cases under the FLSA can be complex and difficult, involving the interaction of various statutes, regulations, and evolving case-law.  The difficulty of this case appears to be appropriately reflected in the hours and time entries submitted by Plaintiffs' counsel.

### iii.  Skill Required to Perform the Legal Services Rendered

This case involved several difficult legal issues and complex class action procedures, which require a certain degree of skill and knowledge.  Employment law is dynamic, requiring counsel to stay abreast of developments in both state and federal law.  Moreover, as with any litigation in federal court, attorneys in overtime cases must be thoroughly familiar with developments and changes in the Federal Rules of Civil Procedure and the Local Civil Rules of this District.

### iv.  Attorney's Opportunity Costs in Pressing the Instant Litigation

As noted above, Plaintiffs' counsel has documented over 1,190 attorney hours of time devoted to this case.  Such a time commitment represents a significant opportunity cost for an attorney, especially a solo practitioner, in terms of other cases that could have been handled during the same period.  In addition, Plaintiffs' counsel averred that he advanced all of the costs of this litigation because Plaintiffs did not have the ability to pay those costs.  Plaintiffs' counsel also averred that he was not able to accept several other contingency cases during the pendency of this action because of his firm's limited resources to advance litigation costs. Plaintiffs' counsel has also lost use of the operating funds advanced during the pendency of the case.  Thus, the opportunity-cost

factor supports approval of the requested amount of attorney's fees.

### v.  Customary Fee for Like Work

Plaintiffs' counsel averred that his standard hourly rate in non-contingency employment matters is $300.00.   Plaintiffs' counsel further noted that he usually seeks an increase over his normal hourly rate to account for the risk of accepting employment cases like this one on a contingency basis and to compensate him for the beneficial results obtained.   He suggests use of a rate of $350.00 per hour would be an appropriate enhancement to account for the contingent nature of the action.

Generally, the hourly rate included in an attorney's fee calculation should be the "prevailing market rates in the relevant community." *Rum Creek Coal Sales*, 31 F.3d at 175.  As set forth in the Affidavits of Ms. Burnette and Mr. Murphy, the requested amount of attorney's fees is within the market rate for experienced employment lawyers in South Carolina.

### vi.  Attorney's Expectations at the Outset of the Litigation

As note above, Plaintiffs' counsel handled this matter on a contingency basis, pursuant to written fee agreements with the named Plaintiffs as class representatives.  The Contingent Fee Agreements signed by the four named Plaintiffs and Plaintiffs' counsel provide for an attorney's fee amount equal to one-third of the gross amount of any recovery or the court-awarded fees, whichever is greater.  *See* Contingent Fee Agreements of Faile, Roman, DePalma, and Craton.  ("In the event the case is filed as a lawsuit, it is hereby expressly agreed that Law firm will retain or claim thirty-three and one-third percent (33 1/3%) of any and all monies or other compensation which may be paid or become due in settlement, or by judgment or otherwise.  If the Court makes an award of attorney's fees, Law firm will retain the larger of the Court-awarded fees or 33 1/3% of the total

recovery (including the fee award)."). The Consent to Join Lawsuit forms whereby each participant in the collective action opted in to the case contain the following language:

> As a current or former employee of Lancaster County EMS, I hereby consent, agree, and opt-in to become a party plaintiff herein and to be bound by any settlement of this action or adjudication of the Court. . . . I hereby further authorize the named Plaintiffs herein to retain their counsel of record or to select new counsel, as they shall determine in their discretion, and I hereby further authorize such counsel to make all decisions with respect to the conduct and handling of this action, including the settlement thereof, as they deem appropriate or necessary, subject to the approval of the Court.

*See* Consent to Join Lawsuit form, ¶¶ 6, 8.

The expectation of the named Plaintiffs and Plaintiffs' counsel was that the attorney's fees in this case would be the greater of one-third of the total recovery or the court-awarded fees.

### vii.  Time Limitations Imposed by the Client or Circumstances

The time required by the circumstances of this case is discussed in connection with items (i) and (iv) above. Neither Plaintiffs nor Plaintiffs' counsel have made the court aware of any other time limitations that were imposed.

### viii.  Amount in Controversy and Results Obtained

The Fourth Circuit has acknowledged that "'the most critical factor' in calculating a reasonable fee award 'is the degree of success obtained.'" *Brodziak v. Runyon*, 145 F.3d 194, 196 (4th Cir. 1998) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983)). The settlement of this matter represents significant success on behalf of Plaintiffs and the Plaintiff class in challenging the overtime pay practices within Defendant's EMS Department. Plaintiffs achieved success in all phases of this litigation, including the motion for partial summary judgment and the motion for class certification. In summary, the results obtained on Plaintiffs' behalf in this case amply support the request for attorney's fees and costs.

### ix.  Experience, Reputation, and Ability of Attorney

This factor is discussed above in connection with the section entitled Quality, Skill and Efficiency of Attorney Involved.

### x.  Undesirability of the Case Within the Legal Community in Which the Suit Arose

This factor is also discussed above in connection with Public Policy considerations relevant to a common fund award.

### xi.  Nature and Length of the Professional Relationship Between Attorney and Client

Plaintiffs' counsel represented the group of named Plaintiffs and the Plaintiff class for approximately sixteen months during the course of this litigation.  According to Plaintiffs' counsel, this is the first matter for which he has provided any legal services to any of the named Plaintiffs. The court does not find the nature and length of the relationship to be of any particular significance, either in favoring or disfavoring approval of the fees sought.

### xii.  Attorneys' Fee Awards in Similar Cases

The attorney's fees and costs requested by Plaintiffs' counsel are in line with awards in other employment cases in the District of South Carolina.  Plaintiffs' counsel averred that the court approved a rate of $350 per hour on his most recent attorney's fee application in a FLSA case in this district.  *George et al. v. Pro Med Ambulance Service, LLC*, C/A No. 2:10-cv-00087-RMG (D.S.C. Oct. 20, 2011) (Dkt. No. 50).  Plaintiffs' counsel cited to a number of other employment cases in state and federal court in South Carolina with similar effective hourly rates for experienced litigation counsel in employment matters.

Using a rate of $350.00 per hour for the 1,194.4 hours Plaintiffs' counsel testified that he has expended on the case as of the date of Plaintiffs' motion, plus the estimated thirty hours of additional

work yet to be performed, would yield a lodestar amount of $428,540. Adding the 35.6 hours for legal assistant time at $75.00 per hour would add $2,670.00 to the lodestar amount. The requested fee of $500,000 would, therefore, be the equivalent of a 1.16 multiplier above the lodestar amount, which is well within the range of fees approved in similar cases. Even at Plaintiffs' counsel's regular hourly rate of $300.00 per hour, the risk multiplier would be 1.35 times the lodestar amount, which again is well within the range of reasonable attorney's fee amounts in common fund cases. *See Kay Co.*, 749 F. Supp. 2d at 470 ("Courts have generally held that lodestar multipliers falling between 2 and 4.5 demonstrate a reasonable attorneys' fee."). The *Kay* court approved a requested fee amount that produced a lodestar multiplier between 3.4 to 4.3 times the lodestar amount. *Id.*; *see also Smith v. Krispy Kreme Doughnut Corp.*, 2007 WL 119157, at *3 (using lodestar cross-check and approving multiplier of 1.6 times above the lodestar amount). Accordingly, the lodestar cross-check supports the attorney's fee amount requested by Plaintiffs' counsel. In addition, the costs of $35,000.00 are fully supported by the record in this case.

### C.  Service Payments to Named Plaintiffs and Steering Committee Members

The proposed apportionment of the settlement also provides for the payment of additional amounts to the named Plaintiffs and to the members of the Plaintiffs' Steering Committee in the total amount of $67,500. Plaintiffs propose to divide this amount as follows: $18,000 each to the two lead Plaintiffs, Kevin Faile and Louis Roman; $9,000 each to the other two named Plaintiffs, Al DePalma and Scott Craton; and $4,500 each to the three other members of the Plaintiffs' Steering Committee, Larry Adams, Katherine Holloway, and Helen Ortega.

It is very common in class action cases for service or incentive payments to be paid to named Plaintiffs or class representatives in addition to their proportionate share of the recovery. Such

payments compensate Plaintiffs for their additional efforts, risks, and hardships they have undertaken as class representatives on behalf of the group in filing and prosecuting the action. Service or incentive payments are especially appropriate in employment litigation, where "the plaintiff is often a former or current employee of the defendant, and thus, by lending his name to the litigation, he has, for the benefit of the class a whole, undertaken the risk of adverse actions by the employer or co-workers." *Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 187 (W.D.N.Y. 2005).

Courts around the country have approved substantial incentive payments in FLSA collective actions and other employment-related class actions. *See, e.g., Bredbenner v. Liberty Travel, Inc.*, 2011 WL 1344745, *22-23 (D.N.J. Apr. 8, 2011) (approving incentive payments of $10,000 to eight named plaintiffs; citing 2006 study referenced in 4 *Newberg on Class Actions* § 11.38, at 11-80, that showed average incentive award to class representatives to be $16,000) (unpublished); *Clark v. Ecolab, Inc.*, 2010 WL 1948198 *9 (S.D.N.Y. May 11, 2010) (approving $10,000 service awards to seven named plaintiffs in hybrid class/collective action involving unpaid overtime) (unpublished); *Hoffman v. First Student, Inc.*, 2010 WL 1176641, *3 (D. Md. Mar. 23, 2010) (affirming $3,000 service payments to seven lead plaintiffs in FLSA action brought on behalf of over 750 class members, with total gross recovery of $1.55 million) (unpublished); *In re Janney Montgomery Scott LLC Fin. Consultant Litigation*, 2009 WL 2137224, *12 (E.D. Pa. Jul. 16, 2009) (approving incentive payments of $20,000 each to three named Plaintiffs where there were no objections to these payments) (unpublished); *Wineland v. Casey's General Stores, Inc.*, 267 F.R.D. 669, 677-78 (S.D. Iowa 2009) (approving incentive payments of $10,000 per named plaintiff and $1,000 for each deponent in FLSA case); *Frank*, 228 F.R.D. at 187 (approving incentive award to class representative of $10,523.37, which represented 8.4% of the total settlement fund).

Here, the total of the service payments requested by Plaintiffs of $67,500.00 represents 4.5% of the gross amount of the settlement in this case. The largest proposed amounts for each of the lead Plaintiffs ($18,000.00) represents 1.2% of the gross settlement amount each. The average proposed service payment among the seven members of the Plaintiffs' Steering Committee is approximately $9,600.00, and is approximately 45% of the average $21,063.24 payment that the seven Committee members will receive on their underlying claims, apart from the incentive payments.

The record demonstrates that the lead Plaintiffs and the members of the Steering Committee devoted substantial time to this case, and all have taken a risk in serving as the driving force behind this lawsuit against Defendant. According to the affidavits attached to Plaintiffs' motion, both lead Plaintiffs have devoted hundreds of hours to the case, including interviewing and selecting counsel, reviewing pleadings, assisting with discovery responses, sitting for depositions and attending the depositions of most witnesses in the case, participating in strategy meetings with the committee, communicating with counsel about all aspects of the case, and participating in the mediations of this case. (*See* Affidavits of Kevin Faile and Louis Roman). The amounts of the proposed service payments were thoroughly discussed and debated among the Plaintiffs Steering Committee and were voted on and approved with the two lead Plaintiffs abstaining. (See Affidavit of Helen Ortega). The proposed amounts of service payments to the two other named Plaintiffs and the three remaining Steering Committee members were based on their corresponding risks and level of involvement in the case.

## IV. Conclusion

For all of the foregoing reasons, the court hereby grants final approval of the proposed settlement in this case, including the proposed apportionment of the settlement proceeds to

27

individual Plaintiffs, the payment of service or incentive payments to the named Plaintiffs and the members of the Plaintiffs' Steering Committee as set out above, and the payment of attorney's fees in the amount of $500,000 and costs in the amount of $35,000 to Plaintiffs' counsel from the gross settlement proceeds.

On agreement of counsel, the matter will be dismissed without prejudice upon entry of this order, subject to any party's right to reinstate the matter within sixty days of entry of this order to enforce the terms of the settlement or address other matters raised by the pleadings in the event of failure of the settlement for any reason.  Once settlement is complete, the parties may, but are not required, to submit a notice of dismissal with prejudice.

IT IS SO ORDERED.

s/ Cameron McGowan Currie
CAMERON MCGOWAN CURRIE
UNITED STATES DISTRICT JUDGE

Columbia, South Carolina
March 8, 2012

28